KIRKPATRICK v. HIXON et al.

No. 33574. Feb. 1, 1949.

202 P. 2d 703.

C. W. Schwoerke and S. J. Clay, both of Oklahoma City, for petitioner.

Reilly & Ruth, of Kingfisher, a n d Mac Q. Williamson, Atty. Gen., for respondents.

GIBSON, J. This is an original proceeding brought by W. A. Kirkpatrick,

hereinafter referred to as petitioner, to review an order of the State Industrial Commission denying compensation.

Petitioner, in his claim filed on July 23, 1947, stated that while in the employ of A. C. Hixon, hereinafter referred to as respondent, he sustained an injury to his right eye which resulted in the loss of the eye.

The evidence shows without dispute the petitioner sustained an injury to his eye as stated in his claim and the injury arose out of and in the course of his employment. Compensation was denied on the sole ground that the petitioner at the time he sustained his injury was not engaged in an employment defined as hazardous by the Workmen's Compensation Act. 85 O. S. 1941 §2.

While the evidence is in conflict as to certain particulars, the great weight of evidence establishes the following facts: Respondent's main occupation was that of a farmer. He farmed 525 acres, of which a great portion was farmed to wheat. He kept on hand at all times at least three combines, several tractor plows and tractors and other implements such as are usually kept on a farm. He also used his combines to harvest and thresh grain for others for hire as well as his own. His farm was located in the vicinity of Hennessey, Oklahoma. He also owned and operated a hotel in the city of Hennessey in which he and his family resided. Adjacent to the hotel there was a large vacant lot or yard on which he stored his implements when not in use and upon which lot the implements were overhauled, adjusted, and reconditioned before again being used. It is also shown that respondent on different occasions purchased and brought from other states new and secondhand implements which were unloaded upon the lot or yard and there assembled and sold to other farmers, and the evidence also shows that the respondent had made considerable profit out of such business. The evidence also shows that it was the custom of respondent

after using his implements for some time to store them on the lot and overhaul, adjust and recondition them for sale; that such work was performed by employees of respondent. The work of overhauling and reconditioning consisted mainly in removing parts and cleaning them, equipping combines with new spark plugs and adjusting the carburetors, and if any parts were out of order and needed repairing they were removed and taken to a repair shop in the city of Hennessey for the purpose of having them repaired. No machinery, equipment or appliances were used in performing this service except simple tools.

It is also shown by the evidence that petitioner was a skilled mechanic. He had been in the employ of and working for respondent about two weeks prior to the time he sustained his injury. At the time he was employed he was assigned to work upon the lot. The work consisted of assembling and putting together new implements which had been stored on the lot, reconditioning used implements, especially combines, and putting them in condition for sale. That during this time respondent had sold several new tractor plows from this lot and one used combine, which implements had been purchased by him and brought in from another state and unloaded and stored on the lot.

On the day petitioner sustained his injury he was engaged in inspecting, overhauling, and reconditioning for the purpose of sale a used combine. It was ascertained that the sprocket on this combine was out of order and needed repairing and while in the act of removing the sprocket it broke and a particle thereof struck petitioner in the eye causing a loss of the use of the eye.

We think this evidence sufficient to show that while respondent's main occupation was that of a farmer, he was also engaged, as a separate branch of his business, in the business of a retail dealer in new and used farm imple-

ments, and that petitioner sustained his injury while engaged in overhauling, adjusting, and reconditioning a used combine for the purpose of sale. The commission so found, and we accept this finding as supported by the great weight of the evidence. The commission, however, concluded that petitioner in performing such service was not engaged in an employment defined as hazardous by the Workmen's Compensation Act and was therefore not entitled to recover compensation.

It is conceded by petitioner t h a t neither the business of a farmer nor that of a retail implement dealer constitutes a hazardous business under the Workmen's Compensation A c t. He, however, contends that under the evidence and finding of the commission respondent in connection with his retail sales business maintained a workshop; that the work done upon the lot of assembling, overhauling, adjusting, and reconditioning the implements for sale rendered the lot a workshop within the meaning of the Workmen's Compensation Act. We do not agree. The Workmen's Compensation Act as amended by the 1945 Act, 85 O. S. 1947 Supp. §3, defined a workshop as follows:

" 'Workshop' means a n y premises, yard, plant, room or place wherein machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise, or incidental to the process of m a k i n g, altering, repairing, printing, or ornamenting, cleaning, finishing, or adopting for sale or otherwise, any article, or part of article, machine or thing over which premises, room or place the employer of the person working therein has the rights of access or control."

It will be noted that the Act defines workshop as any premises, yard, plant, room or place where machinery is employed, among other things, for the purpose of repairing, cleaning, finishing or adopting an article for sale and in the process of which manual or mechanical labor is employed. The evidence shows that the only appliances or equipment u s e d in assembling, overhauling, adjusting, and reconditioning the implements for sale consisted of simple tools only. No other machinery of any kind or character was used in performing such service. The use of these simple tools to perform this service on the implements stored upon the lot did not render such lot a workshop within the meaning of the Workmen's Compensation Act. Moreover, the work of assembling and reconditioning these implements for the purpose of sale was merely incidental to and connected with the sale thereof, and in performing such service petitioner was not engaged in a hazardous employment within the meaning of the Workmen's Compensation Act.

In the case of Hurley v. O'Brien, 192 Okla. 490, 137 P. 2d 592, we held that a retail grocery and meat market was not transformed into a workshop by the use in connection with the business of a small electric meat slicer and sausage grinder. In that case we said:

"A retail meat market is one for vending meats at retail. The purpose of the equipment therein is to better effectuate and carry out the business of retail vending of meats, and whether such equipment is operated by hand or an electric motor is immaterial; so far as the nature of the business is concerned, it still continues to be a retail meat market and nothing more. This was the effect of our holding in Plaza Grill v. Webster, 182 Okla. 533, 78 P. 2d 818; Enid Cemetery Ass'n v. Grace, 177 Okla. 320, 59 P. 2d 284; Sims v. St. Anthony Hospital, 180 Okla. 385, 69 P. 2d 1040."

In the case of Wilde v. Physicians & Dentists Bldg. Co., 197 Okla. 683, 174 P. 2d 382, we said:

"Petitioner next contends that t h e case comes within the definition of a workshop as defined by 85 O. S. 1941 §1 et seq., as amended. With this contention we cannot agree. The plaster, sand, and mortar stored in the room, and such tools as a hammer and saw that might be used in connection therew i t h, would not constitute a workshop. As stated in Hurley v. O'Brien, 192 Okla. 490, 137 P. 2d 592, the equip-

ment constituting the employment that of a workshop must be substantial and not mere incident to an otherwise nonhazardous employment."

And in the case of J. B. Herd Hardware Co. v. Kirby, 160 Okla. 2, 15 P. 2d 823, we held that an employee of one engaged in the business of a retail hardware merchant who sustained an injury while assembling and setting up a binder for delivery to a customer was not engaged in an employment defined as hazardous by the Workmen's Compensation Act.

Under the evidence and the above authorities, petitioner was not engaged in an employment defined as hazardous by the Workmen's Compensation Act, and was therefore not entitled to recover compensation.

The view taken renders it unnecessary to pass upon the other questions discussed.

Order sustained.